UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Artists Rights Enforcement Corporation,<br>        Plaintiff,<br>  v.<br>Dionne Warwick,<br>        Defendant. | Case No.<br><br>**COMPLAINT** |

1. For decades, Artists Rights Enforcement Corporation ("Artists Rights") has provided resources and assistance to the recording artist Dionne Warwick at no cost to her so that she could obtain fair compensation for her vast body of work which she had not been receiving. In exchange for Artists Rights' assistance and the risk that these efforts and the costs it incurred would be in vain, Ms. Warwick agreed to pay Artists Rights a percentage of the money that resulted from Artists Rights' work in perpetuity.

2. After decades of service, Ms. Warwick is now trying to evade paying Artists Rights hundreds of thousands, if not millions, of dollars. In so doing, she has violated her contracts with Artists Rights.

**PARTIES**

3. Artists Rights is a corporation organized under the laws of New York, with its principal place of business located at 1776 Broadway, Suite 1001, New York, NY.

4. Dionne Warwick is a natural person residing in and a citizen of New Jersey.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction based on 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

6. This Court has personal jurisdiction pursuant to CPLR § 302(1) because Ms. Warwick transacts business within New York by way of (1) the terms of her contracts with Artists Rights; (2) Ms. Warwick communicated with Artists Rights regarding the contracts at issue and royalty collection at Artists Rights' headquarters in New York, NY; (3) Ms. Warwick traveled to Artists Rights' headquarters in New York City in furtherance of Artists Rights' work on her behalf; (4) Artists Rights negotiated on behalf of Ms. Warwick pursuant to many of the contracts at issue from its office in New York City; and, (5) at least one of the contracts giving rise to the claims was formed in New York, NY.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this district.

## FACTUAL BACKGROUND

8. Artists Rights assists artists, songwriters, and music publishers with the collection of royalties and other fees due them from the use of their artistic material or musical performances. This work includes assisting them in obtaining and paying for negotiations and litigation against record companies and music publishers over royalty disputes. Artists Rights does so by fronting the costs for its work and taking a percentage of any monies recovered as a proximate result of its work.

9. Ms. Warwick is an accomplished singer (as well as an actor and television host) renowned for her many hits, such as "Walk On By" and "Then Came You."

10. During the course of Ms. Warwick's career, Ms. Warwick entered into several agreements, including, but not limited to:

2

    a. A 1971 agreement with Warner Bros. Records in which Ms. Warwick agreed to provide her exclusive recording services to Warner Bros. in exchange for royalties from Warner Bros.' exploitation of recordings made pursuant to the agreement.

    b. A 1974 agreement with Atlantic Recording Corporation pursuant to which Ms. Warwick recorded the song "Then Came You" in exchange for royalties and other earnings from Atlantic's exploitation of the song.

    c. A 1978 agreement with Arista Records (now owned by Sony Music Entertainment) for the exploitation of recordings made pursuant to the agreement.

    d. A 1990 agreement with Warner Strategic Marketing and Warner Special Products (collectively "WSMP") in which WSMP purchased the master recordings that Ms. Warwick originally recorded for Scepter Records (the "Scepter Masters") in exchange for the payment of royalties from WSMP's exploitation of the Scepter Masters.

11. In addition, Ms. Warwick was due monies from Phonographic Performance Limited ("PPL"), a British society responsible for collecting revenue on behalf of performers and record companies, and SoundExchange, an American collective rights management organization designed to collect and distribute digital performance royalties for sound recordings.

12. On January 9, 2002, Ms. Warwick and Artists Rights entered into a contract whereby Ms. Warwick retained Artists Rights to act on behalf of her "in connection with the investigation into and collection and/or recovery of any and all royalties and/or other assets which are or may be due and owing to [Ms. Warwick] as a Scepter Records recording artist." Ex. 1 at 2-3. In exchange for its services as set forth in that contract, Ms. Warwick agreed to pay Artists

Rights "an on-going fifty (50%) percent of all sums and assets which are recovered as a proximate result of [Artists Rights'] activities on [Ms. Warwick's] behalf." Ex. 1 at 2.

13. In February of 2002, Ms. Warwick filed suit against Warner Bros., WSMP and Atlantic. In the complaint, Ms. Warwick alleged, among other things, that WSMP and Atlantic had failed to pay Ms. Warwick for exploitations of the Scepter Masters and "Then Came You".

14. After years of litigation – paid for by Artists Rights – the parties settled the lawsuit and Ms. Warwick finally was able to receive some of the royalties that she justly deserved. One of the provisions of this March 31, 2004 settlement agreement provided that the record companies were required to send all future royalty statements and payments due Ms. Warwick to Artists Rights. Ms. Warwick signed that agreement.

15. In accordance with that settlement agreement, Artists Rights has received all royalty payments for distribution for over 20 years.

16. This settlement was not the only action that Artists Rights undertook, at great effort and expense, on behalf of Ms. Warwick to recoup royalties and reestablish royalty payments.

17. In 2017, Ms. Warwick retained Artists Rights to act on her behalf in connection with royalties from SoundExchange. Even though the 2017 agreement provided that Artists Rights would get a 25% share of the royalties recovered from SoundExchange as a proximate result of Artists Rights' efforts, Artists Rights, without consideration, voluntarily ceased taking a fee for this income at the request of Ms. Warwick. *See* Ex. 2.

18. Again, in 2017, Ms. Warwick requested that Artists Rights determine why she was no longer receiving royalty statements for the records she recorded for Arista Records. Artists Rights investigated the issue and found out that (1) her account with Sony had gone dormant due to it having the wrong current address; and (2) Sony had been remitting payments directly to the

4

State of California because Ms. Warwick allegedly had not paid all of her taxes. Artists Rights' expended considerable effort in getting the tax lien lifted and the payments from Sony reestablished. For this work, Ms. Warwick agreed that Artists Rights would receive a 50% share of the royalties recovered from Sony as a proximate result of Artists Rights' efforts.

19. That same year, Artists Rights again helped Ms. Warwick reestablish additional royalties, this time from PPL. Ms. Warwick and Artists Rights agreed to a reduced fee of 25% of all royalties collected from PPL as a proximate result of Artists Rights' work.

20. In 2021, Artists Rights secured for Ms. Warwick yet another advantageous settlement agreement with respect to the Scepter Masters from a catalog division of Warner Music Group, Rhino Entertainment Company. This work was performed pursuant to the same terms as the original January 9, 2002 Agreement, including that it also required the statements and payment to be sent to Artists Rights. Ms. Warwick also signed this agreement.

21. In 2023, an international dispute arose in connection with the PPL royalties. Again, Artists Rights came to Ms. Warwick's assistance and addressed the issue.

22. Also in 2023, on Ms. Warwick's behalf, Artists Rights negotiated the terms and payment for the use of a sample from her Scepter Master "Walk On By" by one of the top recording artists of today, Doja Cat, in the song "Paint the Town Red." Ms. Warwick profited enormously from Artists Rights' work.

23. Despite the fact that Ms. Warwick's royalty distribution from the aforementioned recording companies had increased approximately sixtyfold as a result of Artists Rights' work, Ms. Warwick increasingly expressed her desire to stop paying Artists Rights. To try to appease her, in addition to the foregoing, Artists Rights agreed, without consideration, to reduce a small portion

of only her SAG-AFTRA union vocal consent fees from her original masters, by 10% if the amount collected exceeded $50,000.00.

24. Artists Rights' work has resulted in more than $2.5 million in revenue, including an average of over $350,000 annually over the past five years.

25. Artists Rights has performed all of its obligations under the contracts.

26. On September 16, 2025, Ms. Warwick's counsel sent a letter to Artists Rights. While the letter's substance is unclear, it appeared that Ms. Warwick was unilaterally purporting to "terminate" the parties' original contract and contending that there were no other agreements between herself and Artists Rights.

27. On information and belief, Ms. Warwick, either personally or through her counsel, has asked the Rhino, Sony and PPL to pay her instead of Artists Rights.

## FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

28. Artists Rights repeats and realleges the allegations set forth in paragraphs 1 to 27 as if fully set forth herein.

29. Artists Rights has performed all of its obligations under the contracts.

30. Ms. Warwick has wrongfully and unreasonably repudiated the contracts.

31. An actual, justiciable controversy exists between Artists Rights and Ms. Warwick because of the latter's purported termination of the contracts or denial of the existence of them.

32. Artists Rights seeks a declaration that, pursuant to the contracts, it is entitled to an on-going 25% of all sums and assets which are recovered as a proximate result of its work in connection with SoundExchange and PPL and 50% for all of the other entities.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

33. Artists Rights repeats and realleges the allegations set forth in paragraphs 1 to 32 as if fully set forth herein.

34. Artists Rights has performed all of its obligations under the contracts.

35. Ms. Warwick breached the contracts by claiming that she had terminated them and asking the record companies to pay her directly.

36. Artists Rights has been and will continue to be harmed by Ms. Warwick's breaches. As a direct and proximate result of Ms. Warwick's conduct, Artists Rights has been damaged in an amount to be proven at trial in excess of $75,000, exclusive of interest and costs.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

38. Artists Rights repeats and realleges the allegations set forth in paragraphs 1 to 37 as if fully set forth herein.

39. Artists Rights expended great effort and cost to obtain settlements and payments regarding royalties and other fees due Ms. Warwick from the use of her artistic material or musical performances.

40. Artists Rights' services enriched Ms. Warwick.

41. It is against equity and good conscience to allow Ms. Warwick to retain the benefit of royalty income streams obtained by Artists Rights without compensating Artists Rights adequately for such work.

## PRAYER FOR RELIEF

**WHEREFORE**, Artists Rights respectfully requests that this Court enter judgment as follows:

1. On the first cause of action, declare the rights of the parties and find that Artists Rights is entitled to an on-going 25% of all sums and assets which are recovered as a proximate result of its work in connection with SoundExchange and PPL and 50% for all of the other entities.

2. On the second cause of action, award compensatory damages in an amount to be proven at trial, plus interest.

3. On the third cause of action, award compensatory damages in an amount to be proven at trial, plus interest.

4. Grant such other and further relief as is just.

Dated: Astoria, NY
December 15, 2025

Glenn Greenberg
Sophia Guan
*Attorneys for Artists Rights Enforcement Corp.*
Mound Cotton Wollan & Greengrass LLP
One Water Street, 44th Floor
New York, NY 10004
212.804.4200
ggreenberg@moundcotton.com
sguan@moundcotton.com