UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Artists Rights Enforcement Corporation,<br>Plaintiff,<br>v.<br>Dionne Warwick,<br>Defendant. | Case No. 25-cv-10381 (KPF) |

**ARTISTS RIGHTS ENFORCEMENT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**MOUND COTTON WOLLAN & GREENGRASS LLP**
Glenn Greenberg
One New York Plaza, 44th Floor
New York, NY 10004
212.804.4200
ggreenberg@moundcotton.com

# TABLE OF CONTENTS


**FACTS** ..... 1

**I. The Contracts** ..... 1

**II. Artists Rights' Performance under the Contracts** ..... 2

**III. Defendant's Purported Termination of the Contracts** ..... 3

**IV. The 2026 Settlement with Sony** ..... 3

**V. The Business Relationship with Primary Wave** ..... 4

**ARGUMENT** ..... 4

**I. Defendant Admitted the Predicate Facts Demonstrating that She Breached the Contracts and Owes $477,554.75 Plus Prejudgment Interest.** ..... 4

- **A. Defendant Admitted that She Entered into the Contracts.** ..... 5
- **B. Defendant Admitted that Artists Rights Performed Its Obligations under the Contracts.** ..... 5
  - ***i. Defendant Admitted that Artists Rights Performed Its Obligations.*** ..... 5
  - ***ii. Artists Rights Was and Remains a Proximate Cause of the Money Received Pursuant to the Contracts.*** ..... 6
- **C. Defendant Breached the Contracts by Purporting to Terminate Them.** ..... 8
- **D. Artists Rights Has Suffered $477,554.75 in Damages Plus Prejudgment Interest.** ..... 9

**II. For the Same Reasons that Artists Rights Is Entitled to Summary Judgment as to the Past Damages, Artists Rights Is Entitled to a Declaration of Its Rights Going Forward.** ..... 9

**III. Defendant's Counterclaims Are Devoid of Support.** ..... 9

- **A. The Declaratory Relief Claims Fail.** ..... 9
  - ***i. Artists Rights Is Seeking to Enforce a Satisfied Contingency, Which Defendant Cannot Terminate.*** ..... 9
  - ***ii. The Contracts Are Not Perpetual in Nature, But, Regardless, They Have to Be Enforced as Written.*** ..... 10
  - ***iii. Artists Rights Does Not Provide Legal Services.*** ..... 10
- **B. The Remaining Claims Fail.** ..... 11
  - ***i. All But the Equitable Accounting and Breach of Contract Claims Fail Because Defendant Admitted that She Has Not Suffered and Is Not Seeking Any Damages.*** ..... 11

*ii.* ***Defendant's Counterclaim for Unjust Enrichment Fails Because Artists Rights Was Paid Pursuant to the Contracts and Defendant Admitted that Artists Rights Was Entitled to the Money It Has Received to Date. .......11***

*iii.* ***Defendant's Counterclaim for Tortious Interference Fails Because She Cannot Satisfy Many of Its Elements......................................................12***

*iv.* ***The Remaining Claims Fail Because Defendant Admitted that Artists Rights Neither Was Her Agent nor Her Fiduciary and that Artists Rights Did Not Engage in the Alleged Bad Acts. ................................................13***

**CONCLUSION .........................................................................................................15**

# TABLE OF AUTHORITIES

## Cases

*Artists Rights Enforcement Corp. v. Davis*,
2006 WL 5110772 (N.Y. Sup. Mar. 1, 2006) ........ 7, 9

*Bermant v. Keveney*, 88 Misc. 527 (App. Term),
*aff'd*, 170 A.D. 898 (App. Div. 1915) ........ 10

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc*.,
602 F. Supp. 3d 663 (S.D.N.Y. 2022) ........ 14

*Compagnia Importazioni Esportazioni Rappresentanze v. L-3 Commc'ns Corp*.,
703 F. Supp. 2d 296 (S.D.N.Y. 2010) ........ 8, 10

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42 (2d Cir. 2011) ........ 5

*FurryRecords, Inc. v. RealNetworks, Inc.*,
2002 WL 2005812 (S.D.N.Y. Aug. 30, 2002) ........ 10

*Goldman v. Metro. Life Ins. Co*., 5 N.Y.3d 561 (N.Y. 2005) ........ 11

*Hain v. Jamison*, 28 N.Y.3d 524 (N.Y. 2016) ........ 6, 7, 8

*Holmes v. Artists Rts. Enf't Corp.*, 148 Fed. App'x 252, 258 (6th Cir. 2005) ........ 7, 8, 9, 10

*In re Brooklyn Navy Yard Asbestos Litig*., 971 F.2d 831 (2d Cir. 1992) ........ 7

*Kronos, Inc. v. AVX Corp*., 81 N.Y.2d 90 (N.Y. 1993) ........ 11

*Law Offs. of Ira H. Leibowitz v. Landmark Ventures, Inc*.,
131 A.D.3d 583 (N.Y. 2d Dep't 2015) ........ 13

*Legurnic v. Ciccone*, 63 F. Supp. 3d 241 (E.D.N.Y. 2014) ........ 11

*Leontios v. Arzanipour*, 22 A.D.3d 272 (N.Y. 1st Dep't 2005) ........ 10

*Soley v. Wasserman*, 823 F.Supp.2d 221 (S.D.N.Y. 2011) ........ 11

*Spotlight Ticket Mgmt., Inc. v. Daigle*,
2024 WL 3966900 (S.D.N.Y. Aug. 28, 2024) ........ 12, 13

*WFB Telecomms., Inc. v. NYNEX Corp*., 188 A.D.2d 257 (N.Y. 1st Dep't 1992) ........ 12

*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) ........ 11

## Statutes

17 U.S.C. § 203(a)(4)(A) ........ 13

17 U.S.C. § 302 ........ 10

5004 ........ 9

CPLR §§ 5001(a) ........ 9

N.Y. JUD L. § 495 ........ 10

## Other Authorities

N.Y. Pattern Jury Instr.—Civil 3:57 .......... 11, 12

Defendant engaged Plaintiff Artists Rights Enforcement Corporation "in connection with the investigation into and collection and/or recovery of any and all royalties and/or other assets which are or may be due and owing to" her in connection with Warner Bros., Atlantic Recording Corporation, Warner Strategic Marketing and Warner Special Products (collectively, "Warner"), Sony Music Entertainment, SoundExchange and Phonographic Performance Limited ("PPL"). In exchange, Defendant agreed that Artists Rights would be "entitled to an on-going" percent "of all sums and assets which are recovered as a proximate result of" Artists Rights' work. Artists Rights performed its obligations under the contracts, thereby entitling it to the agreed upon ongoing percentage "of all sums and assets which are recovered as a proximate result of" Artists Rights' work. Defendant breached the contracts by purporting to terminate them so as to deny Artists Rights its entitlements on an "on-going basis." So far, Artists Rights has suffered $477,554.75 in damages as a result of Defendant's breaches. The Court should grant summary judgment in Artists Rights' favor in that amount plus prejudgment interest and declare that Artists Rights is entitled to the percentages called for in the contracts on an ongoing basis.

## FACTS

### I. The Contracts

Defendant entered into contracts with Artists Rights to enforce her rights concerning the collection of money from Warner and Sony pursuant to the terms contained in Exhibit 1 to the operative Complaint, which provided that Artists Rights was entitled to "an on-going" 50% contingency fee "of all sums and assets which are recovered as a proximate result of [Artists Rights'] activities on [Defendant's] behalf pursuant to th[e] agreement." Dkt. 32-1 at 2; *see also* Ex. 1 at 23:14-23:20.[1] She entered into contracts with Artists Rights to enforce her rights

[1] Unless stated otherwise, all exhibits are to the Declaration of Glenn Greenberg in support of the Motion for Summary Judgment.

concerning the collection of money from SoundExchange and PPL pursuant to the terms contained in Exhibit 2 to the operative Complaint, which contained similar terms except the percent was 25% rather than 50%. Dkt. 32-2 at 1. *See also* Ex. 1 at 79:2-79:7, 90:24-91:7.[2] Per the Contracts, Artists Rights' responsibilities were to: (1) "investigat[e] into and collect[] and/or recover[] any and all royalties and/or other assets which are or may be due and owing to" Defendant in connection with the subject of the Contracts; (2) should Artists Rights deem it necessary, recommend counsel; (3) pay for the attorneys' costs and fees; and (4) pay the money received based on the percentages called for by the Contracts. *See* Dkt. 32-1 at 2; Dkt. 32-2.

## II. Artists Rights' Performance under the Contracts

Defendant testified that prior to engaging Artists Rights, she either was not, or does not recall receiving, money from Warner, Sony, SoundExchange, or PPL for her recordings. Ex. 2 at 1-2; Ex. 1 at 58:24-59:10; 76:22-77:3, 85:14-85:16; *see also* Dec. of Gabin Rubin at ¶ 6 (stating that Defendant was in fact not receiving money from Sony prior to Artists Rights' retention). Artists Rights performed its obligations and Defendant admitted that after engaging Artists Rights, she started receiving money from Warner, Sony, SoundExchange and PPL in connection with her recordings. *See e.g.*, Ex. 1 at 35:11-39:8, 73:25-75:8, 82:8-82:11, 89:25-90:4; Dkt. 39, Amended Counterclaims ¶ 59.

Artists Rights recommended counsel to Defendant in connection with the litigation captioned *Warwick v. Warner Special Products, Inc., et al.*, 02-cv-1741 (GEL) (S.D.N.Y.). *See e.g.*, Ex. 3 at 6:6-7:8; *see also* Dkt. 32-1 at 2; *see* Ex. 4. [redacted]

[2] The contracts regarding Artists Rights' work in connection with Defendant's royalties from Warner, Sony, SoundExchange and PPL are referred to collectively herein as the "Contracts."

Defendant admitted that Artists Rights paid her the money that Artists Rights received from Warner, Sony, SoundExchange, and PPL and that Artists Rights provided her with letters containing both the check for the money owed and an explanation regarding the calculation of the money she was receiving. Ex. 1 at 53:10-58:10, 73:25-75:8, 84:7-85:6, & 90:9-91:7.

In addition, Artists Rights drafted part of, filed, and served a termination notice pursuant to § 203 of the Copyright Act in order to try to negotiate a better agreement for Defendant or, if necessary, litigate against Sony. Schulberg Dec. ¶ 4; Dec. of Gabin Rubin at ¶ 7. As of September 16, 2025, Artists Rights had engaged in settlement negotiations with Sony but had not reached a settlement. Dec. of Gabin Rubin at ¶ 8.

## III. Defendant's Purported Termination of the Contracts

On September 16, 2025, Defendant's representative sent a notice purportedly terminating the Contracts. Dkt. 39, Amended Counterclaims ¶ 81. Defendant neither seeks any damages nor disputes that Artists Rights was entitled to money until she terminated the Contracts. Ex. 6 at 8; Ex. 1 at 24:14-24:18, 108:19-108:23.

## IV. The 2026 Settlement with Sony

[redacted] During this litigation, Sony's representative admitted under oath in a declaration that: (1) the termination notice created "an actual controversy" between it and Defendant; (2) the Sony Settlement resolved the disputes regarding the notice; and (3) "the [n]otice led to the settlement negotiations that caused the consummation of the [Sony] Settlement." Schulberg Dec. ¶¶ 6, 9, 11.

[redacted] Artists Rights has not been paid any money in connection with this agreement. Rubin Dec. at ¶ 9.[3]

In addition, Defendant has not paid Artists Rights its 25% share of the [redacted] she has received from SoundExchange since she asserted that she was terminating the Contracts. *See* Ex. 8 at 4-5 (stating that Defendant has received [redacted] from SoundExchange since March 31, 2022); *see also* Ex. 9 (stating that SoundExchange paid Defendant [redacted] between March 31, 2022 and the date of the letter purporting to terminate the Contracts).

## V. The Business Relationship with Primary Wave

Artists Rights sent a letter informing Primary Wave of its entitlement to certain revenue streams. Ex. 10 at 2. Artists Rights' rationale for sending the letter was to protect its economic interests under the Contracts, not to harm Defendant. Rubin Dec. at ¶ 10. [redacted] Defendant delayed the prospective business relationship with Primary Wave. Ex. 12 at 97:13-99:9. Defendant has not entered into a contract with Primary Wave. Ex. 1 at 102:9-102:15.

# <u>ARGUMENT</u>

## I. Defendant Admitted the Predicate Facts Demonstrating that She Breached the Contracts and Owes $477,554.75 Plus Prejudgment Interest.

The elements of breach of contract are: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the

[3] To the extent that Defendant has retained any other money in connection with the matters at issue in the lawsuit, she has breached the contract for those amounts as well.

contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

**A. Defendant Admitted that She Entered into the Contracts.**

Defendant admitted that she entered into contracts with Artists Rights concerning money from Warner and Sony pursuant to the terms contained in Exhibit 1 to the operative complaint. Ex. 1 at 17:23-19:21. She also admitted that she entered into contracts with Artists Rights concerning money from SoundExchange and PPL pursuant to the terms contained in Exhibit 2 to the operative complaint. Ex. 1 at 23:14-23:20; 79:2-79:7, 90:24-91:7.

**B. Defendant Admitted that Artists Rights Performed Its Obligations under the Contracts.**

***i. Defendant Admitted that Artists Rights Performed Its Obligations.***

Artists Rights' responsibilities under the Contracts were to: (1) "investigat[e] into and collect[] and/or recover[] any and all royalties and/or other assets which are or may be due and owing to" Defendant in connection with the subject of the Contracts; (2) should Artists Rights deem it necessary, recommend counsel; (3) pay for the attorneys' costs and fees; and (4) pay the money received based on the percentages called for by the Contracts. Dkt. 32-1 at 2; Dkt. 32-2.

Defendant admitted that prior to engaging Artists Rights she either was not, or does not remember, receiving money from Warner, Sony, SoundExchange, or PPL for her recordings. Ex. 2 at 1-2; Ex. 1 at 58:24-59:10; 76:22-77:3, 85:14-85:16; *see also* Dec. of Gabin Rubin at ¶ 6 (stating that Defendant was in fact not receiving money from Sony prior to Artists Rights' retention). Artists Rights performed its obligations and Defendant admitted that she started receiving money from those entities after engaging Artists Rights. *See e.g.*, Ex. 1 at 35:11-39:8, 73:25-75:8, 82:8-82:11, 89:25-90:4; Dkt. 39, Amended Counterclaims ¶ 59.

Artists Rights recommended Ira Greenberg and, subsequently, Oren Warshavsky, as counsel in connection with *Warwick v. Warner Special Products, Inc*. *See e.g.*, Ex. 3 at 6:6-7:8; *see also* Dkt. 32-1 at 2. [redacted]

Artists Rights paid for Defendant's attorneys' costs and fees. *See e.g.*, Ex. 3 at 68:18-68:25.

Defendant admitted that Artists Rights paid her the money it received from Warner, Sony, SoundExchange, and PPL and that Artists Rights provided her letters explaining how much it had received, how it calculated its fees, and a check for the amounts Artists Rights had received minus its fee. Ex. 1 at 53:10-58:10; 73:25-75:8, 84:7-85:6, & 90:9-91:7.

There is no factual dispute that Artists Rights complied with its obligations under the Contracts.

***ii.*** **Artists Rights Was and Remains a Proximate Cause of the Money Received Pursuant to the Contracts.**

The Contracts provide that Artists Rights is entitled to "an on-going" percent "of all sums and assets which are recovered as a proximate result of [its] activities on [Defendant's] behalf pursuant to th[e] agreement." Dkt. 32-1 at 2; Dkt. 32-2. To establish proximate cause, one generally must show that their conduct played a "substantial" part in bringing about the result. *See e.g.*, *Hain v. Jamison*, 28 N.Y.3d 524, 529 (N.Y. 2016). Defendant admitted that she did not receive or did not remember receiving money from Warner, Sony, SoundExchange, or PPL prior to engaging Artists Rights, but that Artists Rights performed its obligations and she started to receive the money she was owed from those entities after she engaged Artists Rights. Ex. 2 at 1-2; Ex. 1 at 35:11-39:8, 58:24-59:10; 73:25-75:8, 76:22-77:3, 82:8-82:11, 85:14-85:16, & 89:25-90:4; *see* Dkt. 39, Amended Counterclaims ¶ 59; *see also* Dec. of Gabin Rubin at ¶ 6 (stating that Defendant was not receiving money from Sony prior to Artists Rights' engagement). These admissions

establish that the contingency in the Contracts had been satisfied—that Artists Rights was a proximate cause of her recoveries.

Indeed, in *Artists Rights Enforcement Corp. v. Davis*, the New York Supreme Court addressed an agreement with the same contractual language as that which is at issue: the artist agreed to Artists Rights' fee of "fifty (50%) percent of all sums which may come into [Artists Rights'] hands or which may be realized as a proximate result of [its] activities on [defendant's] behalf." 2006 WL 5110772. The Court found this agreement to be "clear and unambiguous" and held that even death does not terminate Artists Rights' entitlement to "any results proximately garnered by Artists Rights' services[.]" This decision should be given "great weight." *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir. 1992).

The Sixth Circuit in *Holmes v. Artists Rts. Enf't Corp.* reached the same conclusion under Michigan law when interpreting substantively identical language. 148 Fed. App'x 252, 258 (6th Cir. 2005).

The only part of this case for which Defendant did not admit that Artists Rights was a proximate cause regarded a settlement agreement she made this year with Sony. She was unable to comment on it since she apparently was unaware that her manager had signed it on her behalf until the agreement was shown to her at her deposition. Ex. 1 at 103:23-105:11. Artists Rights had filed and served on Sony a termination notice pursuant to § 203 of the Copyright Act in order to try to negotiate a better agreement for Defendant or, if necessary, litigate against Sony. Schulberg Dec. ¶ 4; Dec. of Gabin Rubin at ¶ 7. Artists Rights had engaged in settlement negotiations with Sony as well. Dec. of Gabin Rubin at ¶ 8. To assess whether Artists Rights' work was a proximate cause of this settlement, one must assess whether that work was a substantial part of getting Sony to enter into the agreement. *See Hain*, 28 N.Y.3d at 529. [redacted]

[redacted]

Moreover, Sony's representative admitted under oath that: (1) the termination notice created "an actual controversy" between it and Defendant; (2) the Sony Settlement resolved the disputes regarding the notice; and (3) "the [n]otice led to the settlement negotiations that caused the consummation of the [Sony] Settlement." Schulberg Dec. ¶¶ 6, 9, 11. In other words, Sony admitted that Artists Rights' work was a proximate cause of its entering into the Sony Settlement with Defendant. *Id.*; *see Hain*, 28 N.Y.3d at 529. Per the terms of the parties' contract, Artists Rights is entitled to 50% of all sums recovered as a result of the Sony Settlement. Dkt. 32-1; Ex. 1 at 17:23-19:23.

**C. Defendant Breached the Contracts by Purporting to Terminate Them.**

Contingency contracts cannot be terminated once the triggering event has been satisfied. Dkt. 32-1; Dkt. 32-2; Ex. 1 at 17:23-19:23; 79:2-79:7, 90:24-91:7; *see e.g.*, *Compagnia Importazioni Esportazioni Rappresentanze v. L-3 Commc'ns Corp.*, 703 F. Supp. 2d 296, 307 (S.D.N.Y. 2010); *Holmes*, 148 Fed. App'x at 258. It's a breach to purport to do so. Defendant's representative sent a notice purporting to terminate the Contracts even though, as stated, the contingency in the Contracts had been satisfied. Dkt. 39, Amended Counterclaims ¶ 81; *see supra*, Section I(B)(ii). By sending that notice purporting to terminate the Contracts, Defendant breached the Contracts.

### D. Artists Rights Has Suffered $477,554.75 in Damages Plus Prejudgment Interest.

Defendant received [redacted] in connection with the Sony Settlement. Ex. 7 at 1. Per the parties' contract, Artists Rights was entitled to 50%, or [redacted] on February 11, 2026. Ex. 1 at 17:23-19:23; Dkt. 32-1 at 2; Ex. 7 at 1.

Defendant has not paid 25% of the [redacted] that she has received from SoundExchange since she purported to terminate the Contracts. *See* Ex. 8 at 4-5; *see also* Ex. 9.

Artists Rights is entitled to $477,554.75 plus prejudgment interest as a result of Defendant's breaches of the Contracts. CPLR §§ 5001(a), 5004.

## II. For the Same Reasons that Artists Rights Is Entitled to Summary Judgment as to the Past Damages, Artists Rights Is Entitled to a Declaration of Its Rights Going Forward.

In addition to past damages, Artists Rights is entitled to a declaration that it is entitled to 50% of all future amounts that Defendant derives from Warner and Sony and 25% of all future amounts that Defendant derives from SoundExchange and PPL so long as it is a proximate cause of Defendant receiving money from those entities. That is what is called for under the Contracts. Dkt. 32-1 at 2; Dkt. 32-2. That is what the law requires. *Davis*, 2006 WL 5110772; *Holmes*, 148 Fed. App'x at 258.

## III. Defendant's Counterclaims Are Devoid of Support.

### A. The Declaratory Relief Claims Fail.

#### *i.* Artists Rights Is Seeking to Enforce a Satisfied Contingency, Which Defendant Cannot Terminate.

Defendant's declaratory judgment action based on the term of these contingency contracts rests on a red herring. The money at issue all concerns satisfied contingencies. The term of the Contracts cannot be a basis to terminate Artists Rights' legal right to money resulting from those

satisfied contingencies. *See e.g.*, *Compagnia Importazioni Esportazioni Rappresentanze*, 703 F. Supp. 2d at 307; *Holmes*, 148 Fed. App'x at 258.

**_ii._ The Contracts Are Not Perpetual in Nature, But, Regardless, They Have to Be Enforced as Written.**

The term of the Contracts is not perpetual. The Contracts regard money derived from a singer's recordings; a singer can only recover money for their songs as long as the copyrights last. Dkt. 32-1; Dkt. 32-2; *see e.g.*, 17 U.S.C. § 302. The Contracts cannot be indefinite. Rather, as Judge Rakoff held, the copyright limitations are incorporated into the Contracts. *See FurryRecords, Inc. v. RealNetworks, Inc.*, 2002 WL 2005812, at *2 (S.D.N.Y. Aug. 30, 2002); *see e.g.*, 17 U.S.C. § 302.

But even if they were perpetual contracts, that would not matter since that would mean that the Contracts expressly provide that they are perpetual in nature, and New York law requires courts to enforce such contracts as written. *FurryRecords*, 2002 WL 2005812, at *2.

**_iii._ Artists Rights Does Not Provide Legal Services.**

Defendant's declaratory judgment action to terminate the Contracts based on her allegation that Artists Rights performs legal services fails. Defendant's premise is wrong since, as a matter of law, Artists Rights could not perform legal services. N.Y. JUD. L. § 495. But, even if Defendant's premise were true, a client cannot terminate a contingency contract with a lawyer once the contingency is satisfied. *Bermant v. Keveney*, 88 Misc. 527, 531 (N.Y. App. Term 2015), *aff'd*, 170 A.D. 898 (N.Y. App. Div. 1915); *see e.g.*, *Leontios v. Arzanipour*, 22 A.D.3d 272, 273 (N.Y. 1st Dep't 2005).

## B. The Remaining Claims Fail.

### *i.* All But the Equitable Accounting and Breach of Contract Claims Fail Because Defendant Admitted that She Has Not Suffered and Is Not Seeking Any Damages.

Defendant is not seeking damages and therefore cannot satisfy a necessary element for her fraud, tortious interference with a prospective business relationship, and unjust enrichment claims. Ex. 6 at 8; *Soley v. Wasserman*, 823 F.Supp.2d 221, 235 (S.D.N.Y. 2011); N.Y. Pattern Jury Instr.—Civil 3:57; *Legurnic v. Ciccone*, 63 F. Supp. 3d 241, 248 (E.D.N.Y. 2014).

She admitted that Artists Rights was entitled to the money it retained before her representatives sent the termination letter. Ex. 1 at 108:19-108:23. Artists Rights has not retained any fees since then. Therefore, she cannot prove damages as a result of any breach of a fiduciary duty. *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 244 (2d Cir. 2020).

Defendant is limited to nominal damages for her breach of contract claim. *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95–96 (N.Y. 1993).

Summary judgment is appropriate for Counterclaims Three, Four, Seven, and Eight and the assertion of any damages other than nominal damages pursuant to Counterclaim Five.

Artists Rights nevertheless addresses all of the non-declaratory judgment claims below.

### *ii.* Defendant's Counterclaim for Unjust Enrichment Fails Because Artists Rights Was Paid Pursuant to the Contracts and Defendant Admitted that Artists Rights Was Entitled to the Money It Has Received to Date.

A claim for unjust enrichment fails when a matter is controlled by contract. *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. 2005). Defendant's unjust enrichment claim fails since she has admitted that the Contracts exist, the terms they provide, and that they govern this dispute. Dkt. 32-1; Dkt. 32-2; Ex. 1 at 17:23-19:23; 79:2-79:7, & 90:24-91:7.

Further, Defendant admitted that Artists Rights was entitled to its fees until she terminated the Contracts. Ex. 1 at 24:14-24:18. As Artists Rights has not received any money since that point, it could not have been unjustly enriched.

#### *iii.* Defendant's Counterclaim for Tortious Interference Fails Because She Cannot Satisfy Many of Its Elements.

The question is whether Artists Rights' letter informing Primary Wave of its entitlement to the revenue streams at issue pursuant to the Contracts constitutes tortious interference with a prospective business relationship. It does not.

The elements of a tortious interference with a prospective business relationship claim are:

1) Plaintiff had the opportunity to enter into a prospective business relationship;
2) Defendant knew about that prospective business relationship;
3) Defendant intentionally interfered with that prospective business relationship;
4) But for Defendant's interference, Plaintiff would have entered into that prospective business relationship;
5) Defendant committed fraud or misrepresentation (not mere breach of fiduciary duty), or acted for the sole purpose of harming Plaintiff;
6) Plaintiff suffered damages as a result of Defendant's interference.

N.Y. Pattern Jury Instr.—Civil 3:57; *see Spotlight Ticket Mgmt., Inc. v. Daigle*, 2024 WL 3966900, at **11-12 (S.D.N.Y. Aug. 28, 2024).

In order to prevail on this cause of action, the alleged bad act must cause *the third-party* to sever the prospective business relationship. *See e.g.*, *WFB Telecomms., Inc. v. NYNEX Corp.*, 188 A.D.2d 257, 257 (N.Y. 1st Dep't 1992). Here, Defendant is the one who delayed the prospective business relationship, not third-party. Ex. 12 at 97:13-99:9. [redacted] Defendant cannot support her claim for tortious interference with a prospective business relationship when she was the one who paused it.

Defendant cannot demonstrate the fifth element, either. Artists Rights' rationale for sending the letter was to protect its economic interests under the Contracts, not to harm Defendant. Rubin Dec. at ¶ 10. Defendant cannot demonstrate that Artists Rights was solely motivated by a desire to harm Defendant. *Law Offs. of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 131 A.D.3d 583, 586 (N.Y. 2d Dep't 2015). Nor can Defendant's claim be predicated on her argument that Artists Rights breached its fiduciary duty since the "mere breach of fiduciary duty is insufficient to support a claim for tortious interference with prospective business relations[.]" *Spotlight Ticket Mgmt.*, 2024 WL 3966900, at *11.

Defendant's claim for tortious interference fails and the Court should grant summary judgment in Artists Rights' favor.

#### *iv.* The Remaining Claims Fail Because Defendant Admitted that Artists Rights Neither Was Her Agent nor Her Fiduciary and that Artists Rights Did Not Engage in the Alleged Bad Acts.

Defendant's counterclaims for breach of fiduciary duty, breach of contract, fraud, and equitable accounting are all dependent on there being a fiduciary relationship between her and Artists Rights. Dkt. 39 ¶¶ 123-134, 136-138, 146-147. She admitted that they had no such relationship. Ex. 1 at 72:6-72:15. These claims must fail.

Even if that were not the case: (1) Defendant's allegations cannot support the claims as a matter of law; (2) Defendant admitted that her allegations are wrong; or (3) the uncontroverted evidence demonstrates that those allegations are wrong:

| **Allegation** | **Reality** |
|---|---|
| Failed to follow up or take advantage of the § 203 Termination Notice for two years after it was served, and thereafter in 2019 once Sony had rejected them on technical grounds – Dkt. 39 ¶ 131(a), (b). | The first allegation does not consider that there is a two-year "grace period" in which the record company need not do anything. 17 U.S.C. § 203(a)(4)(A). Documents demonstrate the second half of this allegation is wrong. *See e.g.*, Ex. 13; *see also supra*, Section I(B)(ii). |

| | |
|---|---|
| Falsely represented to Defendant that it had improved the royalty terms of the original 2017 Arista Agreement – Dkt. 39 ¶ 131(c). | Defendant admitted that this allegation is wrong. Ex. 1 at 59:11-59:23. |
| Improperly claimed, collected, and retained 50% of the fees related to the sample of "Walk on By" in the song "Paint the Town Red" without fully disclosing to Defendant or obtaining her approval, even though Artists Rights did not investigate and there was no issue with non-payment from the sample use – Dkt. 39 ¶¶ 131(d), 140. | Defendant admitted that all of the allegations except whether Artists Rights had the right to retain 50% of the royalties were wrong. Ex. 1 at 53:10-58:10, 73:25-75:8, 84:7-85:6, & 90:9-91:7. Not only is the remaining issue duplicative of the contract-based issues, but the reason that Artists Rights had the right to retain 50% of the royalties is that the sampled song "Walk on By" was one of the songs at issue in the Warner litigation. Ex. 1 at 47:6-47:8; *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 679 (S.D.N.Y. 2022) (Failla, J.). |
| Failed and/or refused to report and account, or maintain proper records, for all monies it collected on behalf of Defendant – Dkt. 39 ¶¶ 131(e)-(i), 140. | Defendant admitted that this allegation is wrong. Ex. 1 at 53:10-58:10, 73:25-75:8, 84:7-85:6, & 90:9-91:7. |
| Failed to conduct regular audits of any statements of account rendered by record companies – Dkt. 39 ¶ 131(g). | The Contracts did not require Artists Rights to conduct regular audits. *See* Dkt. 32-1; Dkt. 32-2 |
| Improperly applied a 50% commission for the past 23 years on any and all royalty or other income paid to AREC in connection with any non-Scepter Recordings, or for Scepter Recordings beyond the initial investigation into unpaid royalties due Defendant for the Scepter Recordings as of 2002 – Dkt. 39 ¶¶ 131(j), (k) 140. | This is duplicative of the contract-based issues. *See supra*, Section I; *Catalyst Advisors*, 602 F. Supp. 3d at 679. |
| Instructed Warner and Sony in 2025 to ignore Defendant's instructions and render all future statements of account and make all royalty payments to Artists Rights – Dkt. 39 ¶ 131(l). | Documents demonstrate this allegation is wrong. *See e.g.*, Ex. 14. |
| Told Primary Wave that Defendant was "not interested" in selling her royalty stream to Primary Wave, that it had a right to certain royalty streams and that Defendant had no right to sell those rights – Dkt. 39 ¶ 131(m). | Defendant admitted that she had no basis for the allegation that Artists Rights' representative told Primary Wave that Defendant was not interested in selling her royalty stream and it is factually incorrect. Ex. 1 at 102:4-102:8. The remainder is duplicative of the contract-based issues. *See also supra*, Section I; *Catalyst Advisors*, 602 F. Supp. 3d at 679. |

| | |
|---|---|
| Gabin Rubin improperly notarized Defendant's signature on the authorization – Dkt. 39 ¶¶ 131(n), 140. | Defendant admitted that she had no basis for this allegation; it is based on the factually inaccurate premise that Ms. Rubin had an ownership interest in Artists Rights; and it is irrelevant since the authorization is not a part of the Contracts. Ex. 1 at 16:24-18:5, 106:20-107:4; Dec. of Gabin Rubin at ¶ 4. |
| Inserted provisions for direct payments to it – Dkt. 39 ¶ 140. | Defendant admitted that she authorized Artists Rights to receive these payments and that she reviewed the settlement agreements prior to signing them. *See e.g.*, Dkt. 32-1 at 3; Ex. 1 at 35:11-36:21. |
| Hired attorneys to work on Defendant's legal and business interests without disclosing it to her – Dkt. 39 ¶ 140. | Documents demonstrate and Defendant's representatives admitted that this was factually incorrect. *See e.g.*, Ex. 15; Ex. 5. |

Nor is there anything more for Artists Rights to equitably account for since it has provided all that it has: the letters stating how it accounted for the money received from the companies, which included the attached summary statements from those companies, and, to the extent that it still has them, the full statements from those companies.

## CONCLUSION

Defendant has admitted the facts demonstrating that Artists Rights is entitled to the contractually agreed upon ongoing fee. The Court should so hold and grant summary judgment in Artists Rights' favor on all claims and counterclaims.

Dated: New York, NY
November 23, 2026

/s/ Glenn Greenberg
Glenn Greenberg
*Attorneys for Artists Rights Enforcement Corp.*
Mound Cotton Wollan & Greengrass LLP
One New York Plaza, 44th Floor
New York, NY 10004
212.804.4200
ggreenberg@moundcotton.com

**WORD LIMIT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the foregoing memorandum of law complies with the applicable word-count limitation. According to the word count of the word-processing program used to prepare it, the memorandum contains 4,586 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, and required certificates.

Dated: New York, NY
November 23, 2026

/s/ Glenn Greenberg
Glenn Greenberg